**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**Woburn**

**Civil Docket#2381CV01622**

I, C. Andrew Johnson, Deputy Assistant Clerk of the Superior Court, Within and for said County

of Middlesex, do certify that the annexed papers are true copies made by photographic process of

pleadings in **2381CV01622** entered in the Superior Court on the **2nd** day of **June** in the year of

our Lord 2023.

In testimony whereof, I hereunto set my hand and affix seal of said Middlesex Superior Court at

Woburn in said county, this **11th** day of **August**, in the year of our Lord **Two Thousand**

**Twenty-Three.**



C. Andrew Johnson
Deputy Assistant Clerk

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

**2381CV01622 Town Of Groton vs. 3m Company et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Torts | **FILE DATE:** | 06/02/2023 |
| **ACTION CODE:** | B05 | **CASE TRACK:** | A - Average |
| **DESCRIPTION:** Products Liability | | | |
| **CASE DISPOSITION DATE:** 08/11/2023 | | **CASE STATUS:** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE:** | 08/11/2023 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil L1 CR15 |

| PARTIES | |
|---|---|
| **Plaintiff**<br>Town Of Groton<br>173 Main Street<br>Groton, MA 01450 | **Attorney** 440940<br>Richard M Sandman<br>Rodman, Rodman and Sandman, PC<br>Rodman, Rodman and Sandman, PC<br>442 Main St  Suite 300<br>Malden, MA 02148-5122<br>Work Phone (781) 322-3720<br>Added Date: 06/02/2023 |
| **Defendant**<br>3m Company<br>3m Center<br>St. Paul, MN 55144 | |
| **Defendant**<br>Agc Chemical Americas, Inc.<br>55 E. Uwchlan Avenue<br>Suite 201<br>Exton, PA 19341 | |
| **Defendant**<br>Agc, Inc. F/K/A Asahi Glass Co., Ltd. | |
| **Defendant**<br>Angus Fire | |
| **Defendant**<br>Archroma Management, Llc | |
| **Defendant**<br>Archroma U.s., Inc.<br>5435 77 Center Dr.<br>#10<br>Charlotte, NC 28217 | |
| **Defendant**<br>Arkema, Inc.<br>900 1st Avenue<br>King Of Prussia, PA 19406 | |

Printed:  08/14/2023   9:04 am          Case No:  2381CV01622          Page:  1



CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

**Defendant**
Basf Corporation
100 Park Avenue
Florham Park, NJ 07932

**Defendant**
Buckeye Fire Equipment Company
110 Kings Road
Mountain, NC 28086

**Defendant**
Carrier Global Corporation
13995 Pasteur Boulevard
Palm Beach Gardens, FL 33418

**Defendant**
Chemdesign Products, Inc.
2 Stanton Street
Marinette, WI 54143

**Defendant**
Chemguard, Inc.
One Stanton Street
Marinette, WI 54143

**Defendant**
Chemicals Incorporated
12321 Hatcherville Road
Baytown, TX 77521

**Defendant**
Chubb Fire, Ltd.

**Defendant**
Clariant Corporation
4000 Monroe Road
Charlotte, NC 28205

**Defendant**
Corteva, Inc.
974 Centre Road
Wilmington, DE 19805

**Defendant**
Deepwater Chemicals, Inc.
196122 E County Road 40
Woodward, OK 73801

**Defendant**
Dupont DE Nemours, Inc.
974 Centre Road
Building 730
Wilmington, DE 19805

**Defendant**
Dynax Corporation
103 Fairview Park Drive
Elmsford, NY 10523

. CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

---

**Defendant**
E. I. Du Pont DE Nemours And Company
974 Centre Road
Wilmington, DE 19805

**Defendant**
Kidde Plc, Inc.

**Defendant**
Nation Ford Chemical Company
2300 Banks Street
Fort Mill, SC 29715

**Defendant**
National Foam, Inc.
141 Junny Road
Angier, NC 27501

**Defendant**
Raytheon Technologies Corporation
10 Farm Springs Road
Farmington, CT 06032

**Defendant**
The Chemours Company Fc Llc
1007 Market Street
Wilmington, DE 19899

**Defendant**
The Chemours Company
1007 Market Street
Wilmington, DE 19899

**Defendant**
Tyco Fire Products L.p.
1400 Pennbrook Parkway
Lansdale, PA 19446

**Defendant**
Utc Fire & Security Americas Corporation, Inc.
3211 Progress Drive
Lincolnton, NC 28092

---

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| FINANCIAL DETAILS | | | | | |
|---|---|---|---|---|---|
| **Date** | **Fees/Fines/Costs/Charge** | **Assessed** | **Paid** | **Dismissed** | **Balance** |
| 06/02/2023 | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b | 125.00 | 125.00 | 0.00 | 0.00 |
| 06/05/2023 | Civil Filing Fee (per Plaintiff) | 240.00 | 240.00 | 0.00 | 0.00 |
| 06/05/2023 | Civil Security Fee (G.L. c. 262, § 4A) | 20.00 | 20.00 | 0.00 | 0.00 |
| 06/05/2023 | Civil Surcharge (G.L. c. 262, § 4C) | 15.00 | 15.00 | 0.00 | 0.00 |
| | **Total** | **400.00** | **400.00** | **0.00** | **0.00** |

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 06/02/2023 | 1 | Complaint electronically filed. | |
| 06/02/2023 | 2 | Civil action cover sheet filed. | |
| 06/05/2023 | | Case assigned to: DCM Track A - Average was added on 06/05/2023 | |
| 06/05/2023 | | EDocument sent: A Tracking Order was generated and sent to: Plaintiff, Attorney:  Richard M Sandman, Esq. rsandman@rrslaw.net | |
| 06/05/2023 | | Docket Note: 25 summonses mailed to plaintiff's counsel this day | |
| 06/05/2023 | | Demand for jury trial entered. | |
| 06/07/2023 | 3 | Plaintiff Town Of Groton's Motion for appointment of special process server Hank Dewsnap, Dewsnap & Associates. | |
| 06/08/2023 | | Endorsement on Motion for appointment of special process server Hank Dewsnap, Dewsnap & Associates. (#3.0): ALLOWED<br><br>Judge: Ellis, Hon. Sarah Weyland | Ellis |
| 06/08/2023 | | EDocument sent: A Clerk's Notice (eDoc) was generated and sent to: Plaintiff, Attorney:  Richard M Sandman, Esq. rsandman@rrslaw.net | |
| 08/11/2023 | 4 | Defendants Tyco Fire Products L.p., Chemguard, Inc.'s Notice of Filing of Notice of Removal | |
| 08/11/2023 | | Case transferred to another court. | |

**MIDDLESEX, SS.**  *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

**In testimony that the foregoing is a true copy on file and of record made by photographic process, I hereunto set my hand and affix the seal of said Superior Court this 14th day of August 2023.**

_____
**Deputy Assistant Clerk**

Page: 4

Date Filed 6/2/2023 8:24:25 2:28-cv-04573-RMG    Date Filed 08/17/23    Entry Number 6    Page 6 of 58
Superior Court - Middlesex
Docket Number

1                                                                                          L1

# COMMONWEALTH OF MASSACHUSETTS

**Middlesex, ss**                    DEPARTMENT OF THE TRIAL COURT
                                        **MIDDLESEX SUPERIOR COURT**
                                        **(LOWELL)**

| | |
|---|---|
| TOWN OF GROTON, ) | 2381CV01622 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| 3M COMPANY (f/k/a Minnesota Mining and ) | **RECEIVED** |
| Manufacturing, Co.; ANGUS FIRE; ) | |
| AGC CHEMICAL AMERICAS, INC.; AGC ) | |
| INC. F/K/A ASAHI GLASS CO.; ) | 6/2/2023 |
| ARCHROMA MANAGEMENT LLC; ) | |
| ARCHROMA US, INC.; ARKEMA INC.; ) | |
| BASF CORPORATION; BUCKEYE FIRE ) | |
| PROTECTION CO.; CARRIER GLOBAL ) | |
| CORPORATION; CHEMDESIGN ) | |
| PRODUCTS, INC.; CHEMGUARD; ) | |
| CHEMICALS INC.; CHUBB FIRE, LTD.; ) | |
| CLARIANT CORP.; CORTEVA, INC.; ) | |
| DEEPWATER CHEMICALS, INC.; DOE ) | |
| DEFENDANTS, JOHN 1-49; DUPONT DE ) | |
| NEMOURS, INC.; DYNAX CORP.; E.I. DU ) | |
| PONT DE NEMOURS & COMPANY;.; ) | |
| KIDDE PLC INC.; NATIONAL FOAM, ) | |
| INC.; NATION FORD CHEMICAL ) | |
| COMPANY; RAYTHEON TECHNOLOGIES ) | |
| CORPORATION F/K/A UNITED ) | |
| TECHNOLOGIES CORPORATION; THE ) | |
| ANSUL COMPANY; THE CHEMOURS ) | |
| COMPANY; THE CHEMOURS COMPANY ) | |
| FC, LLC; TYCO FIRE PRODUCTS, LP; ) | |
| AND UTC FIRE & SECURITY AMERICAS ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Plaintiff Town of Groton ("Town" or "Plaintiff"), by and through its undersigned

counsel, brings this action against Defendants 3M Company, E. I. DuPont De Nemours and

1

Company, The Chemours Company, The Chemours Company, FC, LLC, Chemguard, Inc.,

Tyco Fire Products, LP, Ansul Company, National Foam Inc., Angus Fire Armour Corporation,

Buckeye Fire Equipment Company, AGC Chemical Americas, Inc., AGC Inc. f/k/a Asahi Glass

Co.,  Archroma US, Inc., Arkema Inc., BASF Corporation, Carrier Global Corporation,

ChemDesign Products, Inc., Chemicals Inc., Chubb Fire, LTD., Clariant Corp., Corteva, Inc.,

Deepwater Chemicals, Inc., DuPont De Nemours, Inc., Dynax Corp.,  Kidde PLC Inc., Nation

Ford Chemical Company, Raytheon Technologies Corporation f/k/a United Technologies

Corporation, UTC Fire & Security Americas Corporation, and John Doe Defendants 1-49

(collectively, "Defendants"). Plaintiff, based on information, belief and investigation of

Counsel, alleges as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiff brings this action against Defendants to recover the considerable costs and damages that it has incurred and will inevitably continue to incur—as a result of the presence of toxic compounds, identified as per- and polyfluoroalkyl substances ("PFAS"), on Plaintiff's real property and in Plaintiff's drinking water wells.

2.    Plaintiff owns and operates three groundwater wells to provide drinking water to customers.  Plaintiff's wells, water sources and supply, water supply and delivery system infrastructure, including any treatment systems, are collectively referred to as "Plaintiff's Property" in this Complaint.

3.    Plaintiff's wells are currently contaminated with highly toxic PFAS compounds, including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS").  PFOA and PFOS have long been manufactured as components for aqueous film-forming foam ("AFFF")—a product used to control and extinguish aviation, marine, fuel, and other shallow spill fires.

4.      PFOA and PFOS both are known to be toxic, persistent in the environment, and
resist to biodegradation.  These compounds move easily through soil and groundwater and pose
a significant risk to environmental and human health and safety. Both are animal carcinogens and
likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA")
has stated that "human epidemiology data report associations between PFOA exposure and high
cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-
induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is
suggestive evidence of carcinogenic potential for PFOS."[1]

5.      Upon information and belief, at various times throughout the 1960s to present date,
Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical
precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical
precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in
Massachusetts.

6.      At all relevant times, upon information and belief, Defendants knew, or reasonably
should have known, about the inherent risks and dangers involved in the use of PFAS compounds
in their products—including that both PFOA and PFOS are mobile in water, not easily
biodegradable, highly persistent in the environment, and present significant and unreasonable risks
to both human health and the environment. Nevertheless, Defendants made a conscious choice to
manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of

---

[1] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document No.
822-R-16-002, available at https://www.epa.gov/sites/default/files/2016-
05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023); *see also* EPA, *Drinking Water
Health Advisory for Perfluorooctanoic Acid (PFOA)*, EPA Document Number: 822-R-16-005
(May 2016) at 16, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OM4O.txt
(last accessed May 8, 2023).

commerce for decades, all while knowing PFAS compounds would be inevitably released into the environment—for instance, in the use of AFFF for fire protection, training, and response activities, even when used in the manners directed and intended by the manufacturer—and concealing their knowledge of the risks involved.

7.     At all relevant times, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through the use of Defendants' Fluorosurfactant Products, as Defendants did not disclose the toxic nature and harmful effects of their Fluorosurfactant Products.

8.     As a result of Defendants' unreasonable acts and omissions, PFAS compounds have migrated through the soil and into the groundwater, have entered into a critical source of water relied upon by Plaintiff to provide for its residents and employees, and have contaminated Plaintiff's Property—thereby subjecting Plaintiff, its tenants, staff, and the general public to the inherent danger of these chemicals. As the manufacturers and sellers of Fluorosurfactant Products, Defendants are responsible for the PFAS contaminants released into Plaintiff's Property.

9.     Through this action, Plaintiff now seeks to recover all available damages arising from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants' actions as asserted herein. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## II.     PARTIES

A.     *PLAINTIFFS*

10.     Plaintiff is a municipal corporation incorporated under the laws of the Commonwealth with its primary address at 173 Main Street, Groton, Massachusetts, 01450.

Plaintiff operates its public water supply system pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300(f)(15), and the reporting system of the U.S. EPA.

11.     Plaintiff has detected PFAS in all three of its groundwater wells.

12.     The Groton Fire Department provides fire and emergency medical response services to the area surrounding Plaintiff's Property. Upon information and belief, Defendants' AFFF products were used for fire-training and fire-fighting activities at sites in and/or around Plaintiff's Property.

13.     The United States Army Garrison Devens Reserve Forces Training Area ("USAG Devens RFTA") is located nearby in Devens, Massachusetts. Upon information and belief, Defendants' AFFF products were used for fire-training and fire-fighting activities at sites in and/or around USAG Devens RFTA.

14.     Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public, as well as an interest in Plaintiff's Property.

B.     *DEFENDANTS*

15.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

16.     **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

17.     3M is the only company that manufactured and/or sold AFFF containing PFOS.

5

18.     **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

19.     **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

20.     **ANGUS:** Defendant Angus Fire maintains corporate headquarters in Bentham, United Kingdom. Angus Fire manufactured, marketed and sold AFFF products that contained PFOA.

21.     **ANSUL:** Defendant Ansul Company is a corporation organized and existing under the laws of the State of Wisconsin. This Defendant manufactured, marketed, and sold AFFF products that contained PFOA.

22.     **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

23.     **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

24.     **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

25.     **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

26.     **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

27.     **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

28.     **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

29.     **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

30.     **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

31.     In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages

7

and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

32. **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

33. **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C., Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

34. **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

35. **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

36. **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

37. **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

38.    **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

39.    Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

40.    Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

41.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

42.    **KIDDE PLC:** Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

43.    **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business

9

located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus

Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation

(collectively, "National Foam/Angus Fire"). This Defendant manufactured and sold AFFF that

contained PFOA.

44.    **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a

South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South

Carolina 29715.

45.    **RAYTHEON TECHNOLOGIES CORP.:** Defendant Raytheon Technologies

Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a

Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington,

Connecticut 06032.

46.    **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership

organized and existing under the laws of the State of Delaware with its principal place of business

located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

47.    Tyco is an indirect subsidiary that is wholly owned by Johnson Controls

International P.L.C., an Irish public limited company listed on the New York Stock Exchange

48.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to

the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco

as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times

relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression

products, including AFFF that contained fluorocarbon surfactants containing PFAS.

49.    **UTC:** Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE

Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at

10

3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United

Technologies Corporation.

50.     Upon information and belief, Defendant John Does 1-49 were manufacturers and/or

sellers of AFFF products. Although the identities of the John Doe Defendants are currently

unknown, it is expected that their names will be ascertained during discovery, at which time the

Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint

as Defendants.

51.     All of the foregoing Defendants, upon information and belief, have previously

conducted and/or currently conduct their business throughout the United States. Moreover, some of

the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the

state of Massachusetts.

52.     Any and all references to a Defendant or Defendants in this Complaint include any

predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

53.     The term "Defendants," without naming any specific one, refers to all Defendants

named in this Complaint jointly and severally. When reference is made to any act or omission of

the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or

representatives of the Defendants committed or authorized such act or omission, or failed to

adequately supervise or properly control or direct their employees while engaged in the

management, direction, operation or control of the affairs of Defendants, and did so while acting

within the scope of their employment or agency.

## III.     JURISDICTION & VENUE

54.     This Court has jurisdiction pursuant to M.G.A.212 § 3 because this is a civil action

for damages in an amount that exceeds the minimal jurisdictional limits of this Court.

55.     Venue is appropriate in this county because it is the county in which Plaintiff is located and has its usual place of business.

## IV.     FACTUAL ALLEGATIONS

A.     THE PFAS CONTAMINANTS AT ISSUE: PFOA AND PFOS

56.     Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

57.     PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

58.     PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

59.     Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

---

[2] See note 1, supra.

60.     Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

61.     Notably, from the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS. According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).[4] The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[5]

62.     Additionally, the EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example […] an airfield at which [PFOA/PFOS] were used for firefighting."[6]

---

[3] *See id.*

[4] *See* EPA, *Fact Sheet PFOA & PFOS Drinking Water Health Advisories*, EPA Document Number: 800-F-16-003, available at available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OR9W.txt (last accessed May 8, 2023).

[5] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023).

[6] *See* note 4, *supra*.

13

63.     EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA announced new Interim Updates Health Advisory levels of 0.004 ppt for PFOA and 0.02 ppt for PFOS.[7]

B.     *AQUEOUS FILM-FORMING FOAM (AFFF) WAS A PRODUCT CONTAINING PFOS AND/OR PFOA AT THE RELEVANT TIME PERIOD*

64.     Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

65.     Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

66.     The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS.  PFHxS is also formed during this process.  All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

67.     When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

---

[7] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, EPA Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed May 8, 2023).

68.     Once PFOA and PFOS are free in the environment, they do not hydrolyze,

photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent

in the environment. As a result of their persistence, they are widely distributed throughout soil, air,

and groundwater.

69.     Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams

do not release PFOA and/or PFOS into the environment.

70.     Despite having knowledge of this fact—as well as having knowledge regarding the

toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture,

distribute and/or sell AFFF with PFOA and/or PFOS,  which has ultimately led to the ongoing

contamination and damages to Plaintiff's Property.

71.     Defendants' Fluorosurfactant Products have been used for their intended purposes in

the process of fire protection, training, and response activities within Connecticut for many years.

During these activities, Defendants' Fluorosurfactant Products were used as directed and intended

by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into

the groundwater, enter into Plaintiff's property, thereby contaminating Plaintiff's wells and

property, as well as causing other extensive and ongoing damages to Plaintiff's Property.

72.     Due to the chemicals' persistent nature, among other things, these chemicals have

caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

C.     DEFENDANTS' KNOWLEDGE AND CONCEALMENT OF THE DANGERS INVOLVED

73.     On information and belief, by the 1970s, Defendants knew, or reasonably should

have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the

open environment per the instructions given by the manufacturer, PFOA and PFOS migrate

through the subsurface, mix easily with groundwater, resist natural degradation, render drinking

water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

74.    At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

75.    For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[8]

76.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

77.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

_____

[8] *See* Office of Minnesota Attorney General, Exhibit List, No. 1588, Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1588.pdf (last accessed May 8, 2023).

[9] *See* DuPont, *C-8 Blood Sampling Results,* available at https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk5ODk5O
Dk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=
2.26293428.885409355.1683587869-581783177.1682689989 (last accessed May 8, 2023).

78.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[10]

79.    Notwithstanding their respective knowledge of the dangers involved with AFFF containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

80.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor,

---

[10] *See* 3M, Internal Memorandum, *Organic Fluorine Levels*, (August 31, 1984), available at https://static.ewg.org/files/226-0483.pdf?_gl=1*1u237yp*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.39402538.885409355.1683587869-581783177.1682689989 (last accessed May 8, 2023).

17

remove, clean up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

81.     Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

D.     *THE HARM TO PLAINTIFF RESULTING FROM PFOA AND PFOS CONTAMINATION*

82.     PFAS compounds have been detected in varying amounts, at varying times in water extracted from Plaintiff's wells.  On several occasions, PFAS have been present at levels above the Massachusetts' Maximum Contaminant Level ("MA MCL") for PFAS6[11] and/or the federally advised Health Advisory Level[12] for PFOA and PFOS.

83.     The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff. It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS in its groundwater

---

[11] *See* 310 CMR 22.00.  On October 2, 2020, the MassDEP published final regulations establishing a drinking water standard, or a Maximum Contaminant Level (MCL), for the sum of six per- and polyfluoroalkyl substances (PFAS). The MCL is 20 parts per trillion (ppt) for the sum of six PFAS compounds: perfluorooctanesulfonic acid (PFOS), perfluorooctanoic acid (PFOA), perfluorohexane sulfonic acid (PFHxS), perfluorononanoic acid (PFNA), perfluoroheptanoic acid (PFHpA), perfluorodecanoic acid (PFDA).

[12] *See* note 7, *supra*.

source, well water, or elsewhere on its property requires investigation, remediation, and monitoring.

84.     Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

85.     The invasion of Plaintiff's Property with PFOA and PFOS is continuous and recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day— the result of which is a new harm to the Plaintiff and its property in each occurrence.

86.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the limited subterranean supplies of fresh drinking water on which Plaintiff's wells depend. Plaintiff's interests in protecting the quality of its citizens' limited drinking water supplies constitutes a reason for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

87.     Through this action, Plaintiff seeks to recover damages (including but not limited to compensatory, punitive, and/or consequential damages) arising from continuous and ongoing contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property as well as the costs incurred to acquire an alternative water supply.

## **FIRST CAUSE OF ACTION**
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY DEFECTIVE DESIGN

88.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

89.     Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

90.     All of Defendants' AFFF products were manufactured for placement into trade or commerce.

91.     Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

92.     As manufacturers, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

93.     By manufacturing and selling PFAS-containing AFFF, Defendants warranted that such AFFF was merchantable, safe, and fit for ordinary purposes.

94.     Defendants breached that warranty as PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

      a.   PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

      b.   Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

      c.   PFOA and/or PFOS pose significant threats to public health; and,

      d.   PFOA and/or PFOS create real and potential environmental damage.

20

95.     Defendants knew of these risks associated with PFOA and PFOS, and failed to use reasonable care in the design of its AFFF products.

96.     AFFF containing PFOA and/or PFOS poses greater danger to the environment than would be expected by ordinary persons such as the Plaintiff and the general public.

97.     At all times, Defendants could make AFFF that did not contain PFOA/PFOS. Reasonable alternative designs existed which could prevent the Plaintiff's damage.

98.     The risks posed by PFAS-containing AFFF far outweigh the products' utility as a flame-control chemical.

99.     The likelihood that PFOA and/or PFOS-containing AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the Plaintiff's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

100.     Upon information and belief, users and consumers of Fluorosurfactant Products relied on Defendants' implied warranty that their AFFF products were safe for use in outdoor fire emergency scenarios and fire control exercise.

101.     As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing AFFF, the Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

102.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with

21

conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

## SECOND OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY FAILURE TO WARN

103.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

104.    As a manufacturer of PFAS-containing AFFF, each Defendant had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiff, the public, and public officials.

105.    PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

      a.   PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

      b.   Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

      c.   PFOA and/or PFOS pose significant threats to public health; and

      d.   PFOA and/or PFOS create real and potential environmental damage.

106.    Defendants knew of the health and property damage risks associated with PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFOA/PFOS-containing AFFF or an instruction that would have allowed Plaintiff to avoid the damage to its property.

22

107.    Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of PFAS-containing AFFF in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFAS-containing AFFF to Plaintiff, governmental agencies, or the public.

108.    Plaintiff would have heeded legally adequate warnings or would have taken steps to prevent potential exposure and contamination of its Property.

109.    As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

110.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

### THIRD CAUSE OF ACTION
NEGLIGENCE

111.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

112.    As a manufacturer and seller of PFAS-containing AFFF, each Defendant owed a duty to Plaintiff and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

113.    Defendants knew or should have known that PFOA and/or PFOS were leaching from AFFF used in outdoor fire control exercises and fire emergency scenarios and contaminating water resources.

114.    Even though Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

    a.  Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing AFFF;

    b.  Issued instructions on how AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Plaintiff's wells;

    c.  Failed to recall and/or warn the users of AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

    d.  Failed and refused to issue the appropriate warning and/or recalls to the users of PFAS-containing AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF.

115.    As a direct and proximate result of Defendants' negligence, the Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

116.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

24

## FOURTH CAUSE OF ACTION

TRESPASS

117.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

118.    Plaintiff is the owner, operator and actual possessor of real property and improvements used for collecting drinking water.

119.    Defendants manufactured, distributed, marketed, and promoted PFAS-containing AFFF with the actual knowledge and/or substantial certainty that PFAS-containing AFFF would, through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater, causing contamination.

120.    Defendants negligently, recklessly, and/or intentionally produced and marketed PFAS-containing AFFF in a manner that caused PFOA and PFOS to contaminate Plaintiff's property.

121.    As a direct and proximate result of Defendants' trespass, Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

122.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

## FIFTH CAUSE OF ACTION
### FRAUDULENT TRANSFER
### (Against DuPont and Chemours only)

123.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

124.    Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

125.    Prior to and during 2015, Defendant DuPont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

126.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "performance chemicals business" products line in July 2015.

127.    In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

128.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

129.    As a result of the transfer of assets and liabilities to Chemours described in this Complaint, DuPont limited the availability of assets to cover judgements for all liability for

26

damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

130.     DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

131.     Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

132.     Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

133.     Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.     Compensatory damages according to proof including, but not limited to:

    a.     Costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA/PFOS contamination in Plaintiff's drinking water supplies, wells, system, and facilities;

    b.   Costs and expenses related to past, present, and future treatment and remediation of PFOA and/or PFOS contamination of Plaintiff's water supplies, wells, system, and facilities;

    c.   Costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Plaintiff's water supplies, wells, system, and facilities

    d.   Costs and expenses related to the past, present, and future installation, maintenance, and purchase of alternative water supplies.

2.   Avoiding the transfer of DuPont's liabilities for the claims brought in this Complaint;

3.   Punitive damages;

4.   Consequential damages;

5.   Pre-judgment and post-judgment interest;

6.   Any other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial pursuant to Massachusetts Rule of Civil Procedure 38.

Dated:  June 2, 2023

                     Respectfully submitted,

                     */s/ Richard Sandman*
                     Richard M. Sandman (BBO # 440940)
                     **SANDMAN LAW, LLC**
                     501 Congress Street, Suite 2021
                     Boston, MA 02210
                     Telephone:  (978) 886-0640
                     rich@sandman-law.com

                     Scott Summy (TX Bar No. 19507500)
                     Cary McDougal (TX Bar No. 13569600)
                     Carla Burke Pickrel (TX Bar No. 24012490)

Jason Julius (TX Bar No. 24131101)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181
ssummy@baronbudd.com
cmcdougal@baronbudd.com
cburkepickrel@baronbudd.com
jjulius@baronbudd.com

Philip F. Cossich, Jr.
Brandon J. Taylor (LA Bar No. 27662)
Darren Sumich (LA Bar No. 23321)
David A. Parsiola (LA Bar No. 21005)
Christina M. Cossich (LA Bar No. 32407)
Andrew Cvitanovic (LA Bar No. 34500)
Luana N. Smith (LA Bar No. 35534)
**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000

*Attorneys for Plaintiff*

MIDDLESEX, SS.        *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this 14th day of August 2023.

_____

**Deputy Assistant Clerk**

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2381CV01622 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY Middlesex Superior Court (Lowell) |

| Plaintiff | Town of Groton | Defendant: | 3M Company, et al. |
|---|---|---|---|
| ADDRESS: | 173 Main Street | ADDRESS: | 3M Center |
| | Groton, MA 01450 | | St. Paul, MN 55144 |
| | | | |
| Plaintiff Attorney: | Richard Sandman | Defendant Attorney: | |
| ADDRESS: | Sandman Law, LLC | ADDRESS: | |
| | 501 Congress Street, Suite 2021 | | |
| | Boston, MA 02210 | | |
| BBO: | 440940 | BBO: | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. B05 and B04 | TYPE OF ACTION (specify) Product Liability/Negligence arising from PFAS | TRACK A/F | HAS A JURY CLAIM BEEN MADE? ☒ YES    ☐ NO |
|---|---|---|---|

*If "Other" please describe: _____

Is there a claim under G.L. c. 93A?
☐ YES    ☒ NO

Is there a class action under Mass. R. Civ. P. 23?
☐ YES    ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

#### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses        _____

    2. Total doctor expenses        _____

    3. Total chiropractic expenses        _____

    4. Total physical therapy expenses        _____

    5. Total other expenses (describe below)        _____

RECEIVED

6/2/2023

                              Subtotal (1-5): _____

B. Documented lost wages and compensation to date      _____

C. Documented property damages to date      _____

D. Reasonably anticipated future medical and hospital expenses      _____

E. Reasonably anticipated lost wages      _____

F. Other documented items of damages (describe below)      _____

Including but not limited to Sampling, Monitoring Remediation, Treatment of Plaintiff's Property & Water Supply

                              TOTAL (A-F): _____

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

Plaintiff brings action against Defendants to recover the considerable costs and damages that have incurred and that will inevitably continue to incur as a result of the presence of toxic compounds, identified as per- polyfluoroalkyl substances (PFAS)

#### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X  /s/ Richard Sandman        Date:   June 2, 2023

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

In Re Aqueous Film-Forming Foams Products Liability MDL 2873; US District Court of South Carolina

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X  /s/ Richard Sandman        Date:   June 2, 2023

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality†*

| | |
|---|---|
| AA1 Contract Action Involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (F) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (A) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

## EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2381CV01622 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Town Of Groton vs. 3m Company et al | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|
| TO: File Copy | COURT NAME & ADDRESS Middlesex Superior - Lowell 370 Jackson Street Lowell, MA 01852 |

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**           **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 08/31/2023 | |
| Response to the complaint filed (also see MRCP 12) | | 10/02/2023 | |
| All motions under MRCP 12, 19, and 20 | 09/30/2023 | 10/30/2023 | 11/29/2023 |
| All motions under MRCP 15 | 07/26/2024 | 08/26/2024 | 08/26/2024 |
| All discovery requests **and depositions** served and non-expert depositions completed | 05/22/2025 | | |
| All motions under MRCP 56 | 06/23/2025 | 07/21/2025 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/18/2025 |
| Case shall be resolved and judgment shall issue by | | | 06/01/2026 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 06/05/2023 | ASSISTANT CLERK Amanda Rowan | PHONE |
|---|---|---|

Date/Time Printed: 06-05-2023 08:43:05            SCV026\ 08/2018

Date Filed 6/7/2023 5:24 PM
Superior Court - Middlesex
Docket Number 2381CV01622

3                                                    L2

# Commonwealth of Massachusetts

No. _____2381CV01622_____

Town of Groton v. 3M Company, et al.

Middlesex Superior Court

**RECEIVED**

**Motion for Appointment as Special Process Server and Order of Appointment**

6/7/2023

In accordance with the provisions of Rule 4c of the M.R.C.P., the undersigned hereby
Motions this Honorable Court for the appointment of:

 Hank Dewsnap, Dewsnap & Associates, LLC, 92 State Street, 8th Fl., Boston, MA 02109
(Name of Appointee)

as process server in the above entitled action. The undersigned swears that to the best of
his (her) knowledge and belief the person to be appointed process server is a Constable
who is experienced in the service of process, is 18 years of age or over and is not a party
to this action.

 Richard M. Sandman                              /s/ Richard M. Sandman
Name of Affiant Atty. For Plff.(Deft.)                  Signature

 Sandman Law, LLC, 501 Congress Street, Suite 2021, Boston, MA 02210
Address

 978-886-0640
Telephone

### Order Appointing Special Process Server

The foregoing Motion is allowed and pursuant to Rule 4c of the M.R.C.P. IT IS
ORDERED that:

_____
(Name of Appointee)

is herby appointed as Special Process Server in the above entitled action.

6/8/23 Motion Allowed

Attest: _____
Deputy Assistant Clerk

(_____ J.)

By: _____
Justice

4

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                SUPERIOR COURT
                                              CIVIL ACTION NO. 2381CV01622

---

TOWN OF GROTON,
                 Plaintiff,
     v.

THE 3M COMPANY, f/k/a Minnesota Mining and
Manufacturing Co.;
ANGUS FIRE;
AGC CHEMICALS AMERICAS INC.;
AGC, INC., F/K/A ASAHI GLASS CO.;
ARCHROMA MANAGEMENT LLC;
ARCHROMA U.S. INC.;
ARKEMA INC.;
BASF CORPORATION;
BUCKEYE FIRE PROTECTION CO.;
CARRIER GLOBAL CORPORATION;
CHEMDESIGN PRODUCTS INC.;
CHEMGUARD;
CHEMICALS, INC.;
CHUBB FIRE, LTD.;
CLARIANT CORP.;
CORTEVA, INC;
DEEPWATER CHEMICALS, INC.;
DOE DEFENDANTS, JOHN 1-49;
DUPONT DE NEMOURS INC.;
DYNAX CORP.;
E. I. DUPONT DE NEMOURS & COMPANY;
KIDDE PLC INC.;
NATIONAL FOAM, INC.;
NATION FORD CHEMICAL COMPANY;
RAYTHEON TECHNOLOGIES CORPORATION
F/K/A UNITED TECHNOLOGIES CORPORATION;
THE ANSUL COMPANY;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS, LP;
AND UTC FIRE & SECURITY AMERICAS
CORPORATION,
                 Defendants.

---

**RECEIVED**
8/11/2023

SR

**DEFENDANTS TYCO FIRE PRODUCTS LP AND CHEMGUARD, INC.
NOTICE OF FILING NOTICE OF REMOVAL**

PLEASE BE ADVISED that on August 11, 2023, this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, was removed to the United States District Court for the District of Massachusetts pursuant to a Notice of Removal dated August 11, 2023.  A copy of the Notice of Removal filed in the United States District Court for the District of Massachusetts is attached as *Exhibit A.*

WHEREFORE, Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco") respectfully give notice that the Middlesex County Superior Court is required to affect the removal of this case and shall proceed no further in this action pursuant to 28 U.S.C. § 1446(d) unless and until it is remanded.

Respectfully submitted,

Tyco Fire Products LP and
Chemguard Chemicals, Inc.

By their attorney,


/s/ *Jessica C. Jeffrey*
Jessica C. Jeffrey (BBO#687683)
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
jessica.jeffrey@nelsonmullins.com
(t) (617)-217-4700
(f) (617) 217-4710

Dated:  August 11, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused a copy of the foregoing document to be served

upon plaintiff's counsel of record by first-class mail, postage prepaid, as follows:

Richard M. Sandman, Esq.                    Scott Summy, Esq.
Sandman Law, LLC                            Cary McDougal, Esq.
501 Congress Street, Suite 2021             Carla Burke Pickrel, Esq.
Boston, MA 02210                            Jason Julius, Esq.
                                            Baron & Budd, P.C.
                                            3102 Oak Lawn Ave., Suite 1100
                                            Dallas, TX 75219-4281


Philip F. Cossich, Jr., Esq.
Brandon J. Taylor, Esq.
Darren Sumich, Esq
David A. Parsiola, Esq.
Christina M. Cossich, Esq.
Andrew Cvitanovic, Esq.
Luana N. Smith, Esq.
Cossich, Sumich, Parsiola & Taylor, LLC
8397 Highway 23, Suite 100
Belle Chasse, LA 70037


Dated:  August 11, 2023                    _/s/  Jessica C. Jeffrey_____
                                            Jessica C. Jeffrey

# EXHIBIT A

Date Filed 8/11/2023 2:33 PM
Superior Court - Middlesex
Docket Number 2381CV01622
Case 2:23-cv-04573-RMG    Date Filed 08/17/23    Entry Number 6    Page 43 of 58
Case 1:23-cv-11840-FDS    Document 1    Filed 08/11/23    Page 1 of 16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

TOWN OF GROTON,
            Plaintiff,
    v.

THE 3M COMPANY, f/k/a Minnesota Mining and
Manufacturing Co.;
ANGUS FIRE;
AGC CHEMICALS AMERICAS INC.;
AGC, INC., F/K/A ASAHI GLASS CO.;
ARCHROMA MANAGEMENT LLC;
ARCHROMA U.S. INC.;
ARKEMA INC.;
BASF CORPORATION;
BUCKEYE FIRE PROTECTION CO.;
CARRIER GLOBAL CORPORATION;
CHEMDESIGN PRODUCTS INC.;
CHEMGUARD;
CHEMICALS, INC.;
CHUBB FIRE, LTD.;
CLARIANT CORP.;
CORTEVA, INC;
DEEPWATER CHEMICALS, INC.;
DOE DEFENDANTS, JOHN 1-49;
DUPONT DE NEMOURS INC.;
DYNAX CORP.;
E. I. DUPONT DE NEMOURS & COMPANY;
KIDDE PLC INC.;
NATIONAL FOAM, INC.;
NATION FORD CHEMICAL COMPANY;
RAYTHEON TECHNOLOGIES CORPORATION
F/K/A UNITED TECHNOLOGIES CORPORATION;
THE ANSUL COMPANY;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS, LP;
AND UTC FIRE & SECURITY AMERICAS
CORPORATION,
            Defendants.



Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U.S. District Court
District of Massachusetts

By: _Maryann de Oliveira_
            Deputy Clerk
Date: 8/11/2023

Civil Action No. _____

**NOTICE OF REMOVAL**

Date Filed 8/11/2023 3:33 PM    2:23-cv-04573-RMG    Date Filed 08/17/23    Entry Number 6    Page 44 of 58
Superior Court - Middlesex        Case 1:23-cv-11840-FDS    Document 1    Filed 08/11/23    Page 2 of 16
Docket Number 2381CV01622

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of Middlesex County, Massachusetts (the "State Court"), to the United States District Court for the District of Massachusetts. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.     Plaintiff, Town of Groton, seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges has resulted in contamination.

2.     Specifically, Plaintiff alleges that Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the use of these substances caused contamination of the Plaintiff's water supplies and water systems (collectively, "Plaintiff's Property"), causing it injury.

3.     At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF"). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal

2

officer removal statute's purpose of protecting persons who, through contractual relationships with

the Government, perform jobs that the Government otherwise would have performed." *Isaacson*

*v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## **BACKGROUND**

4.      This action was filed on June 2, 2023, in the State Court, bearing Index No.

2381CV01622 (Ex. A, Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 101

and 1441(a) because the State Court is located within the District of Massachusetts.

5.      Tyco Fire Products LP was served on July 25, 2023.  Chemguard, Inc. has not been

served in this action.  This Notice of Removal is timely filed in accordance with 28 U.S.C.

§ 1446(b).

6.      Plaintiff generally alleges that Defendants, including Tyco, have designed,

manufactured, marketed, distributed, and/or sold AFFF that contain PFAS, and that the use of

AFFF has caused contamination of Plaintiff's Property.  Plaintiff further alleges that it has incurred

or will incur costs associated with the investigation, remediation, and monitoring of the PFAS

contamination of Plaintiff's Property.

7.      Tyco is not required to notify or obtain the consent of any other Defendant in this

action in order to remove Plaintiff's action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v.*

*Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas*

*Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

8.      Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal

upon all other parties to this case and is also filing a copy with the Clerk of the State Court.

9.      By filing a Notice of Removal in this matter, Tyco does not waive the rights of any

Defendant to object to service of process, the sufficiency of process, jurisdiction over the person,

or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

      10.    Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL
## OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

      11.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense. *Papp*, 842 F.3d at 812; *accord Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

      12.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.

Date Filed 8/11/2023 4:38 PM
Superior Court - Middlesex
Docket Number 2381CV01622

2:23-cv-04573-RMG    Date Filed 08/17/23    Entry Number 6    Page 47 of 58
Case 1:23-cv-11840-FDS    Document 1    Filed 08/11/23    Page 5 of 16

To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

13.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

**A.     <u>MilSpec AFFF</u>**

14.     The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments. Since the late 1960s, following catastrophic fires aboard the aircraft

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel. Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF is also widely used to fight fires at larger civilian airports (so-called "Part 139" airports). The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

15.    The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ("DoD"). The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for

---

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

16.     From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.   In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants.  Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.   Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

*1.     The "Person" Requirement Is Satisfied.*

17.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute.  For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and]

_____

[6] *Id.*

7

partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607

F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

> ### 2.    The *"Acting Under"* Requirement Is Satisfied.

18.    The second requirement ("acting under" a federal officer) is satisfied when an entity

assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The

phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*,

860 F.3d at 255 (internal quotation marks omitted). "[C]ourts have unhesitatingly treated the

'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries

arising from equipment that it *manufactured for the government*." *Id.* (emphasis in original).

19.    The requirement of "acting under" a federal officer is met here because the alleged

PFAS contamination that is the focus of Plaintiff's claims stems in part from MilSpec AFFF, a

vital product provided by Tyco that otherwise "the Government would have had to produce itself."

*Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product

that, without the support of private contractors, the government would have to produce for itself.

*See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-

saving product" used by all branches of the U.S. armed forces and NATO members (internal

quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states

that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary

to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to

achieve improvements in formulations."[7]    Accordingly, the military has long depended upon

outside contractors like Tyco to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3

(holding that AFFF manufacturers were "acting under" a federal officer in connection with the

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

Date Filed 8/11/2023 3:38 PM
Superior Court - Middlesex
Docket Number 2381CV01622

2:23-cv-04573-RMG     Date Filed 08/17/23     Entry Number 6     Page 51 of 58
Case 1:23-cv-11840-FDS   Document 1   Filed 08/11/23   Page 9 of 16

manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL

Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied

because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S.

military); MDL Order 2, at 3–5 (holding likewise in case involving MilSpec AFFF used at Part

139 airport); MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide

MilSpec AFFF, the government would have to manufacture and supply the product itself.

     20.     In designing and manufacturing the MilSpec AFFF at issue, Tyco acted under the

direction and control of one or more federal officers.  Specifically, Tyco acted in accordance with

detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF

formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF

products in question were subject to various tests by the United States Navy before and after being

approved for use by the military and for inclusion on the Qualified Products List maintained by

the DoD.[8]

### 3.    *The "Under Color Of Federal Office" Requirement Is Satisfied.*

     21.     The third requirement, that the lawsuit be "for or related to" the defendant's actions

taken "under color of federal office," is satisfied when there is a "connection or association"

between the defendant's challenged actions and the federal office.  *Papp*, 842 F.3d at 813.  As with

the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low."  *Isaacson*,

517 F.3d at 137.[9]

     22.     Here, Plaintiff alleges that the use of PFAS in AFFF is the source of its injuries.

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

Tyco contends that some of the AFFF giving rise to Plaintiff's claimed injuries was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required by military specifications. As a result, Plaintiff's claims against Tyco are connected to its acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same). It is irrelevant that Plaintiff does not expressly contend that it has been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4. The "Colorable Federal Defense" Requirement Is Satisfied.

23.      The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

24.      At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise

10

"colorable federal defense"). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

25.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Tyco has satisfied these elements for purposes of removal.

26.    The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command

11

participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Those specifications are "reasonably precise" in requiring the use of PFAS. As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

27.     With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

28.     Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long

Date Filed 8/11/2023 3:38 PM
Superior Court - Middlesex
Docket Number 2381CV01622

2:23-cv-04573-RMG    Date Filed 08/17/23    Entry Number 6    Page 55 of 58
Case 1:23-cv-11840-FDS    Document 1    Filed 08/11/23    Page 13 of 16

included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.

Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may

contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the

soil and potentially reach groundwater; and that it has been reported that this may raise

environmental or human health issues.[10]  For example, as early as October 1980, a report supported

by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and

the U.S. Army Medical Research and Development Command stated that AFFF contained

fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered

to have adverse effects environmentally."[11]  By no later than 2001, DoD was aware of data

purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002,

the United States Environmental Protection Agency issued a draft hazard assessment for PFOA,

which reviewed in detail, among other data, human epidemiological studies and animal toxicology

studies pertaining to alleged associations between PFOA and cancer.  More recently, in a

November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA

regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a

"mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-

based fires."[12]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF

contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present

---

[10] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[11] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

13

(subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[13]    If the government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required.  *See Ayo*, 2018 WL 4781145, at \*14; MDL Order 1, 2019 WL 2807266, at \*3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

29.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at \*5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at \*13.

30.    Tyco's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused at least in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law

---

[13]    *See*    MIL-PRF-24385F(SH),    Amendment    4,    §    6.6    &    Tables    I,    III    (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

Date Filed 8/11/2023 3:58 PM
Superior Court - Middlesex
Docket Number 2381CV01622
2:23-cv-04573-RMG    Date Filed 08/17/23    Entry Number 6    Page 57 of 58
Case 1:23-cv-11840-FDS    Document 1    Filed 08/11/23    Page 15 of 16

to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

31.    In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."


WHEREFORE, Tyco hereby removes this action from the Superior Court of Middlesex County, Massachusetts, to this Court.

Respectfully Submitted,
Tyco Fire Products LP and Chemguard, Inc.
By their attorney,


*/s/  Jessica C. Jeffrey*
Jessica C. Jeffrey (BBO#687683)
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
jessica.jeffrey@nelsonmullins.com
(t) (617)-217-4700
Dated: August 11, 2023                    (f) (617) 217-4710

Date Filed 8/11/2023 2:33 PM 2:23-cv-04573-RMG    Date Filed 08/17/23    Entry Number 6    Page 58 of 58
Superior Court - Middlesex
Docket Number 2381CV01622 Case 1:23-cv-11840-FDS    Document 1    Filed 08/11/23    Page 16 of 16

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically all registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on this date including plaintiff's counsel, as follows:

Richard M. Sandman, Esq.
Sandman Law, LLC
501 Congress Street, Suite 2021
Boston, MA 02210

Scott Summy, Esq.
Cary McDougal, Esq.
Carla Burke Pickrel, Esq.
Jason Julius, Esq.
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219-4281

Philip F. Cossich, Jr., Esq.
Brandon J. Taylor, Esq.
Darren Sumich, Esq
David A. Parsiola, Esq.
Christina M. Cossich, Esq.
Andrew Cvitanovic, Esq.
Luana N. Smith, Esq.
Cossich, Sumich, Parsiola & Taylor, LLC
8397 Highway 23, Suite 100
Belle Chasse, LA 70037

Dated: August 11, 2023

/s/ Jessica C. Jeffrey
Jessica C. Jeffrey